GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By:  JACOB M. BERGMAN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2776
Email: jacob.bergman@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 20  Civ. 124 |
| v. | **COMPLAINT** |
| DOVER GREENS, LLC, | |
| Defendant. | |

The United States of America, by its attorney Geoffrey S. Berman, United States

Attorney for the Southern District of New York, acting on behalf of the Administrator of the

United States Environmental Protection Agency ("EPA"), alleges for its complaint against

defendant Dover Greens, LLC, formerly known as Olivet LLC ("Dover Greens" or the

"Defendant"), as follows:

### INTRODUCTION

1.      Exposure to asbestos can lead to devastating health effects, such as lung cancer and

mesothelioma, a rare and usually fatal cancer.  Because asbestos used to be widely used in

construction and can be found in insulation, roofing, tiles, and other building materials, EPA has

promulgated regulations under the Clean Air Act requiring safe work practices when renovating

and demolishing buildings containing asbestos.

1

2.     Dover Greens has repeatedly violated these asbestos handling requirements while renovating the abandoned Harlem Valley Psychiatric Center, a sprawling complex on a 500-acres site in Wingdale, New York (the "Campus").  Dover Greens knew that these buildings contained asbestos and that asbestos work practice regulations must be followed; however, Dover Greens repeatedly failed to follow the required regulations.  Rather, in a rush to prepare, renovate and open buildings for a fundraising event in late October 2013, Dover Greens violated numerous regulations and created an atmosphere where not only Dover Greens' employees and contractors but also the individuals who attended this fundraiser faced increased risk of asbestos exposure.  Dover Greens also failed, during EPA's investigation, to provide EPA the access and information required by the Clean Air Act.

3.     The United States brings this civil action under Section 113(d) of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* (the "CAA" or the "Act"), to obtain permanent injunctive relief compelling Dover Greens to perform future renovations at the Campus in compliance with the Act and its regulations concerning asbestos and to provide other equitable relief.  The United States also seeks civil monetary penalties for each day of violation of the Act and its regulations.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1395 because the violations alleged below occurred in this District, and because the Defendant resides and has its principal place of business in this District.

## PARTIES

6.      Plaintiff is the United States of America on behalf of the Environmental Protection Agency.

7.      Defendant Dover Greens LLC is a limited liability company located in Wingdale, New York, in Dutchess County.  At the time of the violations set forth in this complaint, Dover Greens operated under the name Olivet LLC.  Dover Greens is affiliated with Olivet Nazarene University.  Dover Greens is a "person" within the meaning of CAA § 302(d), 42 U.S.C. § 7602(e).

## THE CLEAN AIR ACT AND NATIONAL EMISSIONS STANDARDS FOR HAZARDOUS AIR POLLUTANTS ("NESHAPs")

### *Asbestos*

8.      Asbestos is a naturally occurring mineral that was used for thermal insulation and fireproofing before it was banned and designated as a hazardous air pollutant under the CAA. Asbestos is hazardous when it is disturbed and becomes airborne, which can occur when asbestos-containing materials are disturbed through demolition work, building or home maintenance, repair, remodeling, and other such activities.

9.      Exposure to asbestos—typically through inhalation of airborne fibers—increases the risk of developing lung disease.  Asbestos is a known human carcinogen associated with the occurrence of lung cancer and mesothelioma.  It is also closely associated with asbestosis, a serious progressive, long-term, non-cancer disease of the lungs.  Medical science has been unable to determine any safe level of exposure to asbestos fibers.  *See* 20 U.S.C. § 3601(a)(3).

*Clean Air Act and Asbestos NESHAP*

10.     Congress enacted the CAA, 42 U.S.C. §§ 7401 *et seq.*, to protect and enhance the quality of the nation's air resources in order to promote the public health and welfare.  The CAA requires EPA to identify hazardous air pollutants ("HAPs") and to promulgate National Emissions Standards for Hazardous Air Pollutants ("NESHAPs") for each HAP.

11.     In 1971, by statute, Congress designated asbestos as a HAP.  *See* CAA § 112(b)(1), 42 U.S.C. § 7412(b)(1); *see also* 40 C.F.R. § 61.01(a).  After this designation, EPA promulgated a NESHAP regulating the handling of asbestos.  *See* 40 C.F.R. §§ 61.145 and 61.150.

12.     The NESHAP's central goal is to prevent people from being exposed to airborne asbestos fibers.  To achieve this goal, the asbestos NESHAP establishes work practice standards and related requirements that must be followed before and during demolition or renovation activity that would disturb in excess of 160 square feet or 260 linear feet of so-called "Regulated Asbestos-Containing Material," or "RACM."  *See generally* 40 C.F.R. § 61.145(a)(1)(i); *see also* 40 C.F.R. §§ 61.145 and 61.150.  RACM includes all "friable asbestos"—defined to include all asbestos that is more than 1% friable, with "friable" in turn defined to mean capable of being crumbled, pulverized, or reduced to powder with hand pressure when dry—plus nonfriable asbestos that has been or will be subjected to sanding, grinding, cutting or abrading, or that has a high probability of becoming friable as a result of the forces acting on the material in the course of demolition or renovation.  *See* 40 C.F.R. § 61.141.

13.     Before the renovation and demolition activities occur, the asbestos NESHAP requires an owner or operator to do (as relevant here) the following:

    a.  Thoroughly inspect the facility to determine if RACM is present in amounts sufficient to trigger federal regulations, and if so, where and in what specific amounts.  *See* 40 C.F.R. § 61.145(a).

    b.  Notify EPA in writing 10 days prior to the commencement of renovation and demolition activities.  This notification must include a description of the facility, its location, the amount of asbestos to be removed, dates of anticipated work, analytical methods used to detect the presence of RACM, and work practices and engineering controls that will be employed to comply with the NESHAP.  *See* 40 C.F.R. § 61.145(b).

14.     During demolition and renovation activities, but before any activity that would break up, dislodge, or similarly disturb RACM or preclude access to the material for subsequent removal, the owner or operator of a facility must then do the following:

    a.  Remove all RACM from the facility being renovated or demolished.  *See* 40 C.F.R. § 61.145(c)(1).

    b.  Ensure that the removed RACM is adequately wetted when stripped from facility components and remains adequately wet until it is collected and contained or treated in preparation for disposal.  *See* 40 C.F.R. §§ 61.145(c)(3), (c)(6)(i),(iii).

15.     In storing waste material containing asbestos, the owner or operator must do the following:

    a.  Seal all asbestos-containing waste materials in leak tight containers while wet.  *See* 40 C.F.R. § 61.150(a)(1)(iii).

      b.  Label containers or plastic bags containing RACM using proper warning labels and the name of the waste generator or the location at which the waste was generated.  *See* 40 C.F.R. § 61.150(a)(1)(iv), (v).

16.     In disposing of waste containing asbestos, an owner and operator must follow additional requirements.  Specifically, it must:

      a.  Dispose of the waste at a waste disposal site that complies with the NESHAP. *See* 40 C.F.R. § 61.154(b).

      b.  Ensure that any vehicle used to transport asbestos-containing waste materials is marked to indicate that asbestos is present in the vehicle, and that such markings are visible during loading and off-loading of the vehicle.  *See* 40 C.F.R. § 61.150(c).

      c.  Maintain waste shipment records for all asbestos-containing waste materials that are transported away from the facility.  *See* 40 C.F.R. § 61.150(d).

17.     Finally, throughout renovation activities, a foreman or management-level person or other authorized representative who has been trained in the regulatory requirements for stripping, removal or otherwise handling or disturbing of RACM must be present on site.  *See* 40 C.F.R. § 61.145(c)(8).

18.     These requirements apply to any "owner or operator of a demolition or renovation activity" where the work performed would disturb in excess of 160 square feet or 260 linear feet of RACM.  *See* 40 C.F.R. § 61.145(a)(1)(i).  "Owner or operator of a demolition or renovation activity" is defined to include "any person who owns, leases, operates, controls, or supervises the facility being demolished or any person who owns, leases, operates, controls, or supervises the

demolition operation, or both." *See* 40 C.F.R. § 61.141.  The term "facility" includes

"installations" such as the Campus.  *See id.*

*EPA's Right to Inspect and Require the Production of Information*

19.     The Act grants EPA broad authority to conduct compliance inspections, upon

presentation of inspectors' credentials.  It provides that, in order to determine if "any person is in

violation of any [emission] standard [including the asbestos NESHAP] . . . the Administrator or

his authorized representative, upon presentation of his credentials . . . shall have a right of entry

to, upon, or through any premises of such person . . . ."  42 U.S.C. § 7414(a)(2).

20.     Moreover, in addition to conducting onsite inspections, EPA may also require the

production of such information as EPA may reasonably require to determine "whether any

person is in violation of any [emission] standard [including the NESHAP]."  42 U.S.C.

§ 7414(a)(1)(G).

21.     Section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), authorizes EPA to commence

a civil action for a permanent or temporary injunction or to recover civil penalties of up to

$25,000 per violation per day, for any violations of, among other things, Subchapter VI of the

CAA or of any rule promulgated under the CAA.

22.     Civil Penalty Inflation Adjustment. The maximum daily civil penalty amounts under

Section 113(b)(2) of the CAA are increased to $37,500 for violations occurring between

January 12, 2009 and November 2, 2015, and to $99,681 per day for violations occurring after

November 2, 2015. 28 U.S.C. § 2461; 73 Fed. Reg. 75340 (Dec. 11, 2008), 78 Fed. Reg. 66644

(Nov. 6, 2013), 81 Fed. Reg. 43091 (July 7, 2016), and 84 Fed. Reg. 2059 (Feb. 6, 2019).

7

## DOVER GREENS' VIOLATIONS OF THE CAA AND THE ASBESTOS NESHAP

23.     When Dover Greens purchased the Campus in June 2013, it knew that many of the buildings on the Campus contained a significant amount of asbestos.  In fact, Dover Greens commissioned an assessment of the Campus in conjunction with its purchase, which specifically identified the presence of "[s]uspect [asbestos-containing] ceiling tiles, floor tiles, and pipe insulation" throughout the property.

24.     This posed a significant problem for Dover Greens as it planned to hold a fundraising event on the Campus in late October 2013, in buildings that were yet to be renovated.  Instead of delaying the fundraiser to allow time for proper renovation, or holding the event away from the Campus at a site that did not contain asbestos, Dover Greens began a slipshod effort to renovate portions of the Campus in advance of the fundraiser.  It repeatedly violated the CAA and the asbestos NESHAP in doing so.

25.     Ultimately, Dover Greens hosted its fundraiser on the property in late October 2013.  Its reckless efforts to renovate the Campus before this fundraiser not only violated the Asbestos NESHAP, but also increased the risk that guests at the event would be exposed to asbestos fibers.

26.     In conducting this renovation project, and as described in more detail below, Dover Greens violated the asbestos NESHAP and the CAA when it failed to do the following:

   a.   inspect the Campus properly and notify EPA before commencing renovation
        activities;

   b.   remove all RACM before renovating the Campus, wet all RACM before stripping
        it from buildings, and ensure the RACM remained wet until it was collected and
        contained;

    c.   seal all asbestos-containing materials in leak tight containers while wet and label containers or plastic bags containing RACM with proper warning labels and the name of the waste generator or the location at which waste was generated;

    d.   dispose of asbestos waste at a proper disposal site, ensure that properly marked vehicles were used to transport asbestos containing waste, and maintain waste shipment records;

    e.   have a trained representative present during the renovation; and

    f.   provide EPA inspectors access to the Campus and respond to requests for information by EPA.

*Lack of Inspection and Notice to EPA*

27.    Dover Greens knew the Campus contained asbestos when it acquired it in June 2013. But Dover Greens failed to conduct a thorough investigation.  Indeed, in a written submission by Dover Greens to EPA after EPA's investigation of this matter began, Dover Greens admitted that it did not conduct a thorough investigation.

28.    Instead, Dover Greens engaged Quality Environmental Solutions & Technology, Inc. ("QUEST") to conduct a limited, and ultimately inadequate, pre-construction survey for asbestos-containing materials at the Campus.  QUEST's inspection was not designed to provide the thorough investigation required by the asbestos NESHAP, and did not do so.

29.    On October 7, 2013, before QUEST had even completed its limited inspection, Dover Greens commenced renovation activities.

30.    Dover Greens did not provide EPA with the advance notice required by the asbestos NESHAP prior to commencing these renovation activities.

*Pre-Renovation Removal of RACM*

31.     Dover Green also failed to properly remove all RACM, as required by the asbestos NESHAP, prior to beginning renovation activity that would break up, dislodge, or similarly disturb RACM or preclude access to the material for subsequent removal.

32.     Between October 7, 2013, and October 28, 2013, Dover Greens conducted renovation work at 19 buildings at the Campus.

33.     The work performed broke up, dislodged, or disturbed RACM or precluded access to the material for subsequent removal.

34.     On October 28, 2013, inspectors from the New York State Department of Labor ("NYSDOL") inspected Building 12 of the Campus (known as the "Chapel"), and found RACM present.  The Chapel had undergone renovation earlier that month, and had been used to host the fundraiser in late October 2013.  In addition, NYSDOL found RACM in the on-campus hospital and building 17.

35.     On November 4 and 5, 2013, EPA conducted an inspection of the Campus and observed yet more RACM, this time in Building 14.  Here, EPA inspectors found numerous 9-inch by 9-inch square floor tiles stacked near a back door.  In fact, Dover Greens' on-site supervisor has subsequently admitted that he had asked contractors to pile up the floor tiles from Building 14, conduct inconsistent with the asbestos NESHAP's requirements.

36.     Moreover, during the inspection, EPA took samples of these floor tiles, along with ceiling tiles, which were also noted to have been removed, leaving mastic (an adhesive that can contain asbestos) exposed.  EPA also took a sample of dilapidated and exposed, pipe insulation from the basement of Building 14 that had otherwise been cleaned recently.  The EPA samples

of mastic from the ceiling tiles, floor tiles, and the pipe insulation were later proved to contain RACM.

37.    EPA inspectors observed similar 9-inch by 9-inch square floor tiles in several other buildings; some tiles were in such poor condition that they crumbled when stepped on.

38.    To the extent that Dover Greens did remove some RACM during the renovation activities on the Campus which were conducted from October 7 through October 28, 2013, it failed to comply with the requirements that the materials be adequately wetted and maintained wet until they were properly contained.

39.    Indeed, during EPA's November 2013 inspection, Dover Greens' foreman and then-attorney, who were both present during the inspection, each confirmed to EPA that Dover Greens did not use water to control emissions during any work inside any part of the Campus. The foreman also stated that the buildings on the Campus did not have running water and that the only source of water was from the fire hydrants. In addition, the foreman told EPA inspectors that no water hoses were connected to the fire hydrants to route water to the buildings where work had been conducted. EPA inspectors further observed that no other source of water was available during the inspection.

40.    Moreover, during the same inspection, Dover Greens' CEO stated to EPA inspectors that, with respect to Building 14, no water was supplied to the building when renovation work was conducted in October 2013. This was confirmed by EPA inspectors who observed a significant amount of dust in Building 14 and discarded dust masks, indicating that no water was used during the removal of asbestos.

41.    After the RACM was removed (without being wetted), Dover Greens then failed to ensure that the stripped RACM remained wet until collected in preparation for disposal. In fact,

Dover Greens admitted in written submissions to EPA that it did not keep RACM waste wet. Moreover, Dover Greens' foreman has stated that, as the on-site supervisor, he failed to direct that waste stripped or removed from the Campus be wetted.

*Failure to Seal and Label Containers*
*When Storing Asbestos-Containing Waste Material*

42.     In storing asbestos-containing waste prior to disposal, Dover Greens failed to place it in leak tight containers while wet.

43.     Dover Greens did not place warning labels on any containers or plastic bags containing asbestos-containing materials, and did not label those containers or plastic bags with the name of the waste generator or the location at which the waste was generated.

44.     Dover Greens' foreman has acknowledged that Dover Greens did not label any trash bags containing asbestos-containing materials.

*Dover Greens Failed to Ensure that Asbestos-Containing*
*Waste Was Properly Disposed of*

45.     After Dover Greens placed asbestos-containing waste in unmarked trash bags, it then, upon information and belief, failed to ensure that this waste was sent to a disposal site that complies with NESHAP. In fact, in written submissions to EPA, Dover Greens conceded that it has no knowledge whatsoever as to where it sent its asbestos-containing waste. In the absence of any effort by Dover Greens to arrange for asbestos-containing waste to be deposited at a compliant waste disposal site, on information and belief, the waste would have been sent to a cheaper, non-compliant disposal facility.

46.     Moreover, Dover Greens failed to ensure that the vehicles used to transport this asbestos-containing waste were marked in accordance with NESHAP. Specifically, vehicles used to transport asbestos are required to be marked with a warning that asbestos is present in the

12

vehicles, and this warning must be visible during the unloading and loading of the waste. However, the website for Royal Carting Service Co. ("Royal Carting"), one of the waste haulers used by Dover Greens to transport asbestos containing waste, revealed that it does not accept "hazardous" waste, a term that would include asbestos waste. Furthermore, invoices from Royal Carting fail to contain any indication that Royal Carting accounted for the cost associated with "hazardous" waste, which typically involves more effort and expense than hauling ordinary construction and demolition debris. Accordingly, Royal Carting would not have followed the procedures required for asbestos-containing waste, including proper warning labels.

47.    In addition, Dover Greens failed to maintain waste shipment records at all, let alone waste shipment records containing the information required by NESHAP. In fact, Dover Greens admitted in its written submissions to EPA that it does not have any waste shipment records for asbestos-containing materials transported off the Campus. Moreover, during EPA's November 2013 inspection, Dover Greens' CEO stated to EPA inspectors that Dover Greens did not have any records regarding asbestos-containing waste materials transported off the Campus.

*Lack of Trained Representative*

48.    Dover Greens failed to have a trained foreman or other management-level representative present during the renovation. Dover Greens has informed EPA that a particular individual was the foreman supervising the renovation work in question, but that person did not possess the necessary asbestos credentials and had not been trained in the provisions of 40 C.F.R. § 61.145.

*Denial of Access and Failure to Produce Information*

49.    On November 1, 2013, just a few days after Dover Greens' fundraiser, two EPA inspectors, accompanied by inspectors from NYSDOL and the U.S. Occupational Safety and

13

Health Administration ("OSHA"), attempted to conduct a compliance inspection at the Campus pursuant to CAA § 114.  Upon arriving at the Campus, the EPA inspectors presented their credentials to the Dover Greens' Communications Director.  After reviewing their credentials, the Communications Director denied EPA inspectors entry and access to the Campus, and the inspectors left having not conducted their inspection.

50.     Only after discussion with Dover Greens and its counsel were EPA inspectors, again accompanied by NYSDOL and OSHA, provided access to the Facility on November 4 and 5, 2013, to conduct a compliance inspection pursuant to CAA § 114.

51.     In addition to its failure to provide EPA inspectors with access to the Campus, Dover Greens also failed to respond to questions issued by EPA in a January 20, 2015 information request, pursuant to CAA § 114.  Dover Greens improperly refused to answer many questions, asserting incorrectly that the responses were not required and that OSHA had "exclusive jurisdiction" over those issues.  Dover Greens' position was simply wrong; the information was directly pertinent to the asbestos NESHAP violations at issue here and CAA § 114 required Dover Greens to respond.

52.     On May 4, 2015, EPA sent Dover Greens a supplemental information request and requested that Dover Greens respond to previously unanswered questions.  Dover Greens again wrongly refused to provide answers to these questions on the grounds that OSHA had exclusive jurisdiction over the issues in question.

*Dover Greens Intends to Continue Renovating Buildings on the Campus*

53.     Dover Greens intends to renovate at least seventeen additional buildings on the Campus.

54.     Work on these buildings is highly likely to be subject to the asbestos NESHAP. Almost all of these buildings were built in the early 1900s when asbestos was commonly used in construction.  Moreover, the initial assessment performed prior to Dover Greens' purchase of the Campus, and the subsequent work performed by QUEST, further show that these buildings are highly likely to contain asbestos-containing materials.

## CLAIMS FOR RELIEF

### Count 1
*Failure to Inspect*
(violation of 40 C.F.R. § 61.145(a))

55.     The United States incorporates by reference paragraphs 1 through 54 above as if fully set forth herein.

56.     The asbestos NESHAP applies to Dover Greens' 2013 demolition or renovation activity because the work performed would disturb in excess of 160 square feet or 260 linear feet of RACM.  Further, Dover Greens' group of 82 buildings at the Campus constitutes an "installation," which in turn qualifies it as a "facility" under the NESHAP.  Because Dover Green owns the buildings at the site, it is the "owner or operator" subject to the NESHAP.

57.     Dover Greens violated 40 C.F.R. § 61.145(a) by failing to thoroughly inspect the Campus prior to conducting renovation activities.

58.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

59.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

60.      Each failure by Dover Greens to thoroughly inspect the Campus prior to conducting renovation activities is a violation of 40 C.F.R. § 61.145(a) for which Dover Greens is liable for civil penalties.

**Count 2**
*Failure to Notify*
(violation of 40 C.F.R. § 61.145(b))

61.      The United States incorporates by reference paragraphs 1 through 60 above as if fully set forth herein.

62.      Dover Greens violated 40 C.F.R. § 61.145(b) by failing to notify EPA prior conducting renovation activities.

63.      Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

64.      Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

65.      Each failure by Dover Greens to notify EPA prior to conducting renovation activities is a violation of 40 C.F.R. § 61.145(b) for which Dover Greens is liable for civil penalties.

**Count 3**
*Failure to Remove All RACM*
(violation of 40 C.F.R. § 61.145(c)(1))

66.      The United States incorporates by reference paragraphs 1 through 65 above as if fully set forth herein.

67.      Dover Greens violated 40 C.F.R. § 61.145(c)(1) by failing remove all RACM from the Campus prior to commencing renovation activities.

68.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

69.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

70.     Each failure by Dover Green to remove RACM from the Campus prior to commencing renovation activities is a violation 40 C.F.R. § 61.145(c)(1) for which Dover Greens is liable for civil penalties.

**Count 4**
*Failure to Wet RACM During Removal*
(violation of 40 C.F.R. § 61.145(c)(3))

71.     The United States incorporates by reference paragraphs 1 through 70 above as if fully set forth herein.

72.     Dover Greens violated 40 C.F.R. § 61.145(c)(3) by failing to wet all RACM during the removal of the RACM from the Campus.

73.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

74.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

75.     Each failure by Dover Greens to wet all RACM during the removal of the RACM from the Campus is a violation of 40 C.F.R. § 61.145(c)(3) for which Dover Greens is liable for civil penalties.

### Count 5
*Failure to Keep RACM Wet Until Collection and Containment*
(violation of 40 C.F.R. § 61.145(c)(6)(i))

76.     The United States incorporates by reference paragraphs 1 through 75 above as if fully set forth herein.

77.     Dover Greens violated 40 C.F.R. § 61.145(c)(6)(i) by failing to ensure that RACM remained wet until it was collected and contained.

78.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

79.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

80.      Each failure by Dover Greens to ensure that RACM remained wet until it was collected and contained is a violation of 40 C.F.R. § 61.145(c)(6)(i) for which Dover Greens is liable for civil penalties.

### Count 6
*Failure Properly to Seal*
(violation of 40 C.F.R. § 61.150(a)(1))

81.     The United States incorporates by reference paragraphs 1 through 80 above as if fully set forth herein.

82.     Dover Greens violated 40 C.F.R. § 61.150(a)(1)(iii) by failing to seal all asbestos containing waste materials in leak tight containers while wet.

83.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

84.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

85.      Each failure by Dover Greens to seal asbestos containing waste materials in leak tight containers while wet is a violation of 40 C.F.R. § 61.150(a)(1)(iii) for which Dover Greens is liable for civil penalties.

**Count 7**
*Failure to Properly Label Containers*
(violation of 40 C.F.R. §§ 61.150(a)(1)(iv), (v))

86.     The United States incorporates by reference paragraphs 1 through 85 above as if fully set forth herein.

87.     Dover Greens violated 40 C.F.R. §§ 61.150(a)(1)(iv) and (v) by failing to label containers or plastic bags containing RACM using proper warning labels and the name of the waste generator or the location at which the waste was generated.

88.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

89.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

90.     Each failure by Dover Greens to label containers or plastic bags containing RACM using proper warning labels is a violation of 40 C.F.R. §§ 61.150(a)(1)(iv) for which Dover Greens is liable for civil penalties.

91.     Each failure by Dover Greens to label containers or plastic bags containing RACM with the name of the waste generator and the location at which the waste was generated is a violation of 40 C.F.R. §§ 61.150(a)(1)(v) for which Dover Greens is liable for civil penalties.

**Count 8**
*Failure to Use NESHAP-Compliant Site for Disposal*
(violation of 40 C.F.R. § 61.150(b))

92.     The United States incorporates by reference paragraphs 1 through 90 above as if fully set forth herein.

93.     Dover Greens violated 40 C.F.R. § 61.150(b) by failing to deposit all asbestos-containing waste at a waste disposal site that complies with the NESHAP.

94.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

95.     Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

96.     Each failure by Dover Greens to deposit asbestos-containing waste at a waste disposal site that complies with the NESHAP is a violation of 40 C.F.R. § 61.150(b) for which Dover Greens is liable for civil penalties.

**Count 9**
*Failure to Use Properly Marked Vehicles*
(violation of 40 C.F.R. § 61.150(c))

97.     The United States incorporates by reference paragraphs 1 through 96 above as if fully set forth herein.

98.     Dover Greens violated 40 C.F.R. § 61.150(c) by failing to use properly marked vehicles to transport asbestos-containing waste.

99.     Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

100.    Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

101.    Each failure by Dover Greens to use properly marked vehicles to transport asbestos-containing waste is a violation of 40 C.F.R. § 61.150(c) for which Dover Greens is liable for civil penalties.

**Count 10**
*Failure to Maintain Records*
(violation of 40 C.F.R. § 61.150(d))

102.    The United States incorporates by reference paragraphs 1 through 101 above as if fully set forth herein.

103.    Dover Greens violated 40 C.F.R. § 61.150(d) by failing to maintain waste shipment records for asbestos-containing waste materials that was transported from the Campus.

104.    Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

105.    Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

106.    Each failure by Dover Greens to maintain waste shipment records for asbestos-containing waste materials that were transported from the Campus is a violation of 40 C.F.R. § 61.150(d) for which Dover Greens is liable for civil penalties.

**Count 11**
*Failure to Have Properly Trained Representative On Site*
(violation of 40 C.F.R. § 61.145(c)(8))

107.    The United States incorporates by reference paragraphs 1 through 106 above as if fully set forth herein.

108.    Dover Greens violated 40 C.F.R. § 61.145(c)(8) by failing to have at least one on-site representative, such as a foreman or management-level person or other authorized representative, trained in the provisions of 40 C.F.R. § 61.145 and the means of complying with them present during the stripping, removal, or disturbance of RACM.

109.    Dover Greens intends to continue to renovate asbestos-containing buildings on the Campus.

110.    Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

111.     Each failure by Dover Green to have at least one on-site representative, such as a foreman or management-level person or other authorized representative, trained in the provisions of 40 C.F.R. § 61.145 and the means of complying with them present during the stripping, removal, or disturbance of RACM is a violation of 40 C.F.R. § 61.145(c)(8) for which Dover Greens is liable for civil penalties.

**Count 12**
*Failure to Permit EPA Site Inspection*
(violation of 42 U.S.C. § 7414(a)(2))

112.    The United States incorporates by reference paragraphs 1 through 111 above as if fully set forth herein.

113.    Dover Greens violated 42 U.S.C. § 7414(a)(2) by denying EPA inspectors access to the Campus after the inspectors properly presented their credentials.

114.    In light of the ongoing work intended by Dover Greens and Dover Greens' past actions, there is a likelihood that EPA will need to conduct additional inspections in the future and that Dover Greens will not comply with those requests.

115.    Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

116.    Each failure by Dover Greens to provide EPA inspectors access to the Campus after the inspectors properly presented their credentials is a violation of 42 U.S.C. § 7414(a)(2) for which Dover Greens is liable for civil penalties.

**Count 13**
*Failure to Respond to EPA Requests for Information*
(violation of 42 U.S.C. § 7414(a)(1)(G))

117.    The United States incorporates by reference paragraphs 1 through 116 above as if fully set forth herein.

118.    Dover Greens violated 42 U.S.C. § 7414(a)(1)(G) by failing to respond to EPA's request for information issued pursuant to 42 U.S.C. § 7414.

119.    In light of the ongoing work intended by Dover Greens and Dover Greens' past actions, there is a likelihood that EPA will need to gather additional information in the future and that defendants will not comply with those requests.

120.    Protection of the public health requires that Dover Greens be enjoined to comply with the CAA and NESHAP in its ongoing renovations and provide any appropriate mitigation for its prior violations.

121.    Each failure by Dover Greens to respond to EPA's requests for information issued pursuant to 42 U.S.C. § 7414 is a violation of 42 U.S.C. § 7414(a)(1)(G) for which Dover Greens is liable for civil penalties.

## PRAYER FOR RELIEF

WHERFORE, the United States of America respectfully requests that this Court:

a.      Enjoin Dover Greens from violating the CAA and NESHAP and provide appropriate mitigation of prior violations;

b.      Order Dover Greens to pay a civil penalty of up to $37,500 per day for each violation of the CAA and NESHAP occurring prior to November 2, 2015, and up to $99,681 per day for each violation thereafter.

c.      Award the United States its costs in this action; and

d.      Grant such other and further relief as the Court deems just and appropriate.


Dated:  New York, New York
        January 7, 2020

                          Respectfully Submitted,

                          GEOFFREY S. BERMAN
                          United States Attorney for the
                          Southern District of New York
                          *Attorney for Plaintiff the United States of America*


                  By:     */s/ Jacob M. Bergman*
                          JACOB M. BERGMAN
                          Assistant United States Attorney
                          86 Chambers Street, 3rd Floor
                          New York, New York 10007
                          Telephone:  (212) 637-2776
                          Facsimile:  (212) 637-2686
                          E-mail:     jacob.bergman@usdoj.gov

ELLEN M. MAHAN
Deputy Section Chief
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

OF COUNSEL:

Joseph Siegel, Esq.
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2